LAND, J.
The relator was arrested and haled before the night recorder’s court of the city of New Orleans on a charge of violating the ordinance against gambling on any sidewalk. The relator was- tried, convicted, and sentenced to pay a fine of $30 or, in default thereof, to imprisonment for 30 days in the parish prison.
Whereupon the relator applied to the criminal district court for the parish of Orleans for a writ of habeas corpus, on the ground that the municipal council of the city of New Orleans was without power to create said night recorder’s court, or to elect a rec,order to preside over the same, and that Joseph Batt, pretending to be the recorder of said court, was not an officer either de jure or de facto. After a hearing, the judge of the criminal district court refused to grant the writ of habeas corpus as prayed for by the relator.
The relator then applied to this court for a writ of certiorari, and a rule nisi issued to the judge of the criminal district court to show cause why the writ should not be granted as prayed for by the relator.
The return of the respondent judge shows that the commission council of the city of New Orleans, acting under authority of section 12 of Act No. 159 of 1912, the municipal charter of said city duly approved and adopted by a vote of the people, in December, 1912, by ordinance established said - night recorder’s court, and elected Joseph Batt as recorder to preside over the same, and that said Joseph Batt has ever since continued to discharge the duties of said office.
Act No. 159 provided a commission form of government for the city of New Orleans, subject to the approval of the qualified voters of said municipality. The act was duly submitted and ratified by a large majority of the votes cast, at the referendum election, and thereupon became the charter of the city of New Orleans. By the will of the electors, “the entire powers and duties of the government of the city of New Orleans” vested, or to be vested, by the Constitution and laws of this state, were “concentrated in the commission council,” composed of the mayor ^.nd four commissioners, to be elected by the people. Id. §§ 3, 4.
The commission was specially authorized to elect “judges of the recorder’s courts” and fix their salaries, not to exceed $2,500 for any one judge. Id., § 12. A subsequent section (21) reads as follows:
“There shall be not less than three police courts in the city of New Orleans, to be'known as recorder’s courts. There shall be one judge *1020 for each of said courts, who shall be chosen by the commission council, as hereinabove provided. * * * The commission council shall have power to locate said courts, to define the territorial jurisdiction thereof, to provide for the transfer of judges from one territorial jurisdiction to another, and to fix the hours of holding court, and the method and mode of procedure.”
It appears that the commission council has provided for four police courts, including the night recorder’s court in question.
We are satisfied from the foregoing provisions that it was the intent of the lawmaker to leave the number of recorder’s courts to the discretion of the commission council. If the intent had been to restrict the number to three, the lawmaker would have said “not more than three.” The term “not less than three” fixes a minimum, and implies that the number may be increased. The power given' to the commission to elect recorders, to locate the courts, to define their territorial jurisdiction, to provide for the transfer of judges, etc., evidences the legislative intent to provide a flexible system, susceptible of expansion to meet the needs of a growing municipality.
The conclusion that the commission was authorized by the city charter to establish a night recorder’s court, and to elect Judge Batt as recorder, makes him not only a de facto, but a de jure, officer. The same conclusion affirms also the jurisdiction of the night recorder’s court. The contention that Judge Batt should have been elected by the people under article 319 of the Constitution does not affect the jurisdiction of the night recorder’s court,- nor deprive him of the charter of a de facto officer. A prisoner arrested by virtue of the mittimus of a committing magistrate cannot, in an application for a habeas corpus, raise the question of the legality of the magistrate’s title to office, when the latter is the regular incumbent de facto, presiding over a tribunal of recognized legal existence and competency. State ex rel. Williams v. Portsdorf, 33 La. Ann. 1411.
The next contention of relator is that article 141 of the Constitution of 1S9S prohibited the Legislature from delegating to the commission the power to create recorder’s courts.
The act reads as follows:
“The General Assembly shall provide for recorders’ courts in the city of New Orleans, to be presided over by magistrates, who need not be attorneys at law, but such courts shall have no jurisdiction except for the trial of offenses-against city ordinances.”
In the city charter of 1912 the Legislature provided for recorder’s courts in the city of New Orleans, and defined their duties and powers. The only power delegated to the commission council over the subject-matter was the power to fix the number of recorders, provided such number should not be less than three.
Article 141 of the Constitution of 1898-directed the Legislature to provide for recorder’s courts in the city of New Orleans, but prescribed no mode or manner in which provision shall be made. A city magistrate or recorder is a city officer. See McQuillan, Municipal Corporations, § 180, p. 410, notes. We are of opinion that it was competent for the Legislature to delegate to the commission the power to increase the number of recorders. The charter provision on the subject-matter is presumed to be constitutional, and no authority to the contrary has been cited. The city charter of 1912 repealed all laws, or parts of laws, in conflict with its provisions, and inaugurated a new system of municipal government for the city of New Orleans. The charter was the joint work of the General Assembly and of the electors of the city of New Orleans, and its provisions should be maintained unless found manifestly repugnant to some particular article of the Constitution of 1898.
*1022 It is therefore ordered that all the writs and orders of this court herein issued be vacated, and that relator’s application be dismissed.
See dissenting opinion of PROVO STY, J., 62 South. 128. .